UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                              Civil No. 05-2997 (PAM/JSM)

      Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Narin Vong, Somaly Vong, Ramsey
County, Irving Herman, Wells Fargo
Home Mortgage, and Dakota County,

      Defendants,

and

Narin Vong and Somaly Vong,

      Cross-Claimants,

v.

Wells Fargo Home Mortgage,

      Cross-Defendant,

and

Irving Herman,

      Cross-Claimant,

v.

Narin Vong, Somaly Vong, and Ramsey
County,

      Cross-Defendants,

and

Irving Herman,

   Counter-Claimant,

v.

United States of America,

   Counter-Defendant,

and

Irving Herman,

   Third-Party Plaintiff,

v.

Bockstruck's Jewelers,

   Third-Party Defendant.

---

This matter is before the Court on the United States of America's Motion for Summary Judgment, Wells Fargo Home Mortgage's Motion for Summary Judgment, and Narin Vong and Somaly Vong's Motion to Supplement the Record. For the reasons that follow, the Court grants the Motions for Summary Judgment and denies the Motion to Supplement the Record.

## BACKGROUND

The United States filed this action to foreclose liens on the personal residence of Defendants Narin and Somaly Vong, and on Narin Vong's contract-for-deed vendee interest in a commercial property. The other Defendants are Ramsey County, Irving Herman in his

capacity as trustee of the Irving Herman Trust ("Trust"), Wells Fargo Home Mortgage ("Wells Fargo"), and Dakota County. Ramsey County and the Trust are parties to this action because they have respective interests in the commercial property. Wells Fargo and Dakota County are parties because they have respective interests in the personal residence.

## A.    The United States' Claims

On October 15, 1992, the Vongs entered into a settlement agreement with the United States to resolve a bankruptcy case and unpaid taxes. The federal tax debt arose from the Vongs' failure to pay taxes on proceeds from their illegal gambling operation.[1] The Vongs agreed to pay $150,000 in 120 monthly payments of $1,250. After the Vongs finished making the 120 payments, the Internal Revenue Service (IRS) would abate the unpaid balance of the Vongs' tax liability, which totaled $730,121. The Vongs also signed a collateral agreement with the Department of Justice, providing that in the event of default, the United States could proceed immediately to collect the entire unpaid balance of the amount due under the settlement agreement.

According to records produced by the United States, the Vongs failed to make forty-eight of the required 120 monthly payments. The Vongs, on the other hand, assert that the IRS failed to credit them with fifty-two payments made with checks and money orders. To support their position, the Vongs provided Somaly Vong's deposition testimony, copies of

---

[1]Narin Vong is imprisoned at the Federal Correctional Institute in Waseca, but not for the illegal gambling operation. He is serving time for a 1997 conviction for his role in a series of armed robberies of jewelry stores.

money order receipts, canceled cashiers' checks made out to people other than the IRS, and carbon copies of checks that were never cashed. The Vongs did not produce canceled checks or copies of cashiers' checks actually paid to the IRS for the disputed payments.

The outstanding balance of the federal tax assessments against the Vongs, which the United States is now seeking to recover, is $769,674.19 plus interest and penalties. Federal tax liens were attached to all property and rights to property belonging to the Vongs. The United States seeks a monetary judgment in the above amount, a judgment that the federal tax liens are attached to the Vongs' personal and commercial property, and a judgment foreclosing the tax liens and ordering a judicial sale of the properties.

**B.     The Vongs' Cross-Claim Against Wells Fargo**

The Vongs filed a cross-claim against Wells Fargo to recover damages caused by an overcharge of interest on their home mortgage loan. In 1984, the Vongs assumed the loan with an interest rate of eight percent. The lender was Minnesota Federal Savings and Loan Association. Wells Fargo began servicing the mortgage on July 1, 1994, but amortized the loan with an 8.5 percent interest rate. When the Vongs brought the interest rate error to Wells Fargo's attention, it corrected the rate and credited the loan balance in full. Wells Fargo also reversed all related charges. Nevertheless, the Vongs now sue for breach of contract, fraud, unjust enrichment, unconscionability, and a violation of the Real Estate Settlement Procedures Act (RESPA).

C.      **The Trust's Counterclaim, Cross-Claim, and Third Party Complaint**

The Trust holds the contract for deed on the commercial property.  It brings a counterclaim and cross-claim against the United States, seeking a declaratory judgment that all interests or encumbrances on the property are junior and subject to the Trust's interest in the property.  The Trust also filed a separate Third-Party Complaint against Bockstruck's Jewelers, seeking a declaratory judgment that Bockstruck's does not have an interest in the commercial property.

**DISCUSSION**

A.      **Standard of Review**

A motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party.  Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).  The burden of demonstrating that there are no genuine issues of material fact rests on the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.**     **The Vongs' Motion to Supplement the Record**

Approximately one month after the hearing on the summary judgment motions, the Vongs filed a Motion to Supplement the Record, explaining that Somaly Vong had "redoubled her efforts to locate documents." (Mot. to Supp. at 2.)  Apparently, a tenant in one of the Vongs' commercial buildings had vacated the premises, leaving a pile of debris. When Somaly Vong cleaned the debris, she ostensibly discovered a box of the Vongs' personal financial documents, including additional documents she claims are evidence of payments to the IRS.  The voluminous additional evidence consists mainly of money order receipts, copies of checks, and portions of bank statements.

The Court denies the Motion to Supplement for several reasons.  First, the submission is untimely, and the Vongs have not given a satisfactory reason for the delay.  The summary judgment motions have been fully briefed and argued.  The documents consist of records that were not only in the Vongs' possession this entire time, but also were readily available from another source—the Vongs' bank—had the Vongs exercised due diligence in gathering information to respond to the United States' motion.  The Vongs have known since August 2000 of the IRS's belief that they were in default.  However, they have not attested that they asked their bank to research or provide records, or that they previously searched all their properties to find records.

Second, the Vongs failed to include a memorandum with the materials or otherwise explain the particular relevance of the documents to the pending issues.  The Court need not sift through the record to locate evidence to support the Vongs' arguments.  <u>See</u> <u>Rodgers v.</u>

City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments"); Nw. Nat'l Ins. Co. v. Baltes, 15 F.3d 660, 662-63 (7th Cir. 1994) (Easterbrook, J.) ("District judges are not archaeologists."); Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc., 695 F.2d 839, 846-47 (5th Cir. 1983) ("Judges are not ferrets!").  The United States described the Vongs' evidentiary submissions as a "document dump," a characterization with which the Court agrees.

Third, Somaly Vong's affidavit is deficient.  It does not relate her personal knowledge that the documents reflect payments made to the IRS to satisfy the Vongs' tax debt.  Finally, even if the Court were to consider the documents, they would not help the Vongs' case because the Vongs have failed to show that the evidence is material.  Indeed, the evidence supports the United States' claim that the Vongs failed to make numerous payments to the IRS.  Additionally, the evidence suffers from the same deficiencies as the Vongs' timely-submitted evidence—the Vongs provide only one side of some checks, bank statements do not name the payors of checks, some checks were marked as returned for insufficient funds, and other checks lack indicia of authenticity.  For these reasons, the Court denies the Vongs' Motion to Supplement the Record.

**C.    The United States' Motion for Summary Judgment**

The United States has submitted prima facie evidence of the settlement agreement and the validity of the federal tax assessments.  See United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993).  The IRS Certificates of Assessments and Payments show that the Vongs

failed to make forty-eight of the required 120 payments. To survive summary judgment, the Vongs must now prove they made the payments.

The Vongs submitted Somaly Vong's deposition testimony, copies of purchaser's receipts for money orders, copies of canceled cashiers' checks made out to other people, and carbon copies of checks that had never been cashed. This evidence does not show that the Vongs made the missing forty-eight payments to the IRS. Significantly, the Vongs did not produce canceled checks or copies of cashiers' checks actually paid to the IRS. Although Somaly Vong testified in her deposition that the Vongs made all of the required payments, her self-serving and uncorroborated testimony is insufficient to withstand summary judgment. See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994).

Because the record shows that the Vongs failed to make the payments and are therefore in default, the Court may reduce the federal tax assessments to judgment. The United States has shown the total amount of the unpaid assessed balance to be $769,674.19 plus interest, which represents $73,948.95 against Narin Vong, and $695,725.24 against Narin and Somaly Vong.

Federal tax liens against the real properties were filed in Ramsey County and Dakota County. The Court may enforce the federal tax liens in this action by ordering a sale of the properties to satisfy the Vongs' tax liability.[2] See 26 U.S.C. § 7403(c). The United States

---

[2]The United States suggests that the Court should analyze whether a judicial sale of the personal residence is appropriate under United States v. Bierbrauer, 936 F.2d 373 (8th Cir. 1991). However, Bierbrauer involved property owned jointly by a delinquent taxpayer and his innocent spouse. Id. at 375. Here, Ms. Vong is not an innocent third-party, and thus,

has entered into stipulations with Ramsey County and Dakota County regarding their interests in the property in the event of a judicial sale.  Ramsey County and Dakota County do not oppose the United States' motion or its characterization of their interests.

The United States also entered into a stipulation with the Trust regarding the commercial property.  However, in response to the United States' Motion, the Trust accuses it of mischaracterizing the stipulation by failing to inform the Court that the United States promised the Trust that it would not sell the Trust's interest.  The Trust therefore opposes the United States' proposed order of sale and asks that it be allowed to bid in any judicial sale. The United States agrees that the Trust has a priority interest in the property and must be paid first, but the United States opposes the Trust's request to bid in the sale because this state-law procedure is not common in forced judicial sales under federal statute.  In its memorandum, the United States explained that it would submit a proposed judgment and order of sale for the two properties if its motion was granted, and at oral argument, it conceded that the order of sale could contain a provision to protect the Trust's interest in the commercial property. Thus, the Court grants the United States' Motion for Summary Judgment, but will give the interested parties an opportunity to submit a judgment and agreed order of sale by May 15, 2007.

---

Bierbrauer is not applicable.  Moreover, the Court finds that a judicial sale will not be inequitable in the circumstances at hand.

**D.    Wells Fargo's Motion for Summary Judgment**

1.    <u>Breach of Contract</u>

The Vongs claim that Wells Fargo committed a breach of contract when it miscalculated the interest rate on the mortgage loan.  Even if this constituted a breach, the claim fails because the Vongs have shown no direct damages resulting from the breach.  <u>See</u> <u>Jensen v. Duluth Area YMCA</u>, 688 N.W.2d 574, 578-79 (Minn. Ct. App. 2004).  Wells Fargo completely remedied the miscalculated interest rate and reversed all charges.

Nevertheless, the Vongs also argue that Wells Fargo caused them consequential damages because the miscalculated interest rate precluded them from making their monthly payments under the settlement agreement with the United States.  Consequential damages are damages that were reasonably foreseeable to the parties at the time they entered into an agreement.  <u>County of Blue Earth v. Wingen</u>, 684 N.W.2d 919, 924 (Minn. Ct. App. 2004) (citing <u>Imdieke v. Blenda-Life, Inc.</u>, 363 N.W.2d 121, 125 (Minn. Ct. App. 1985)).  Here, the Vongs' purported consequential damages are too remote to sustain their breach of contract claim.  Wells Fargo could not have known when it executed the note and mortgage that Narin Vong would be convicted of tax fraud and incarcerated in federal prison for robbery, or that Somaly Vong would struggle with health problems and with collecting rent from her residential tenants.  Moreover, the record shows that the Vongs never increased their monthly payments to comply with the erroneous rate.  After Wells Fargo began servicing the mortgage, the Vongs continued to pay the same amount they had paid to Minnesota Federal Savings and Loan Association.  Thus, there was no increase in payments

that would have hindered them in making their monthly payments to the United States.

The Vongs next claim that the miscalculated interest rate precluded them from refinancing their mortgage. However, Somaly Vong testified that she did not tell Wells Fargo about her attempts to refinance or that the miscalculated interest rate was preventing her from refinancing. The Vongs also have no evidence that they actually attempted to refinance or that the erroneous interest rate prevented them from doing so. In sum, Wells Fargo is entitled to summary judgment on the Vongs' breach of contract claim.

2.    Fraud

To succeed on their fraud claim, the Vongs must show that Wells Fargo (1) made a false representation (2) with knowledge of the falsity of the representation and (3) with the intent to induce reliance; (4) that the representation or omission in fact induced their reliance; and (5) that the Vongs were damaged thereby. See Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986). The Vongs must also show that their reliance on the misrepresentation was reasonable. See N. Petrochem., Co. v. United States Fire Ins. Co., 277 N.W.2d 408, 410 (Minn. 1979). The Vongs' fraud claim fails on several grounds. First, the Vongs have no evidence that Wells Fargo falsely represented the interest rate with the knowledge that it was incorrect. Second, the Vongs have not shown that Wells Fargo intended to induce the Vongs' reliance. Third, there is no evidence that Wells Fargo actually induced the Vongs to rely on the incorrect interest rate. Finally, the Vongs suffered no damage as a result of the erroneous interest rate. Accordingly, the Court grants summary judgment to Wells Fargo on the fraud claim.

3.      Unjust Enrichment

The Vongs allege that Wells Fargo was unjustly enriched by the incorrect interest rate. However, equitable relief cannot be granted where a valid contract exists. United States Fire Ins. Co. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981).  Here, the note and mortgage are a valid contract governing the relationship between Wells Fargo and the Vongs, and the unjust enrichment claim consequently fails.

4.      Unconscionability

The Vongs maintain that the miscalculated interest rate transformed the note and mortgage into an unconscionable contract.  "A contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'"  Matter of Estate of Hoffbeck, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987) (quoting Hume v. United States, 132 U.S. 406, 411 (1889)).  The Vongs' claim is utterly without merit.  There is no evidence of bad faith, unreasonable dealings, or unscrupulous business practices by Wells Fargo.  The Court grants summary judgment on this claim.

5.      RESPA

The Vongs contend that Wells Fargo violated RESPA by altering the interest rate on the mortgage loan.  However, RESPA contains a safe harbor provision if a loan servicer corrects a mistake covered by the statute before litigation is commenced.  See 12 U.S.C. § 2605(f)(4).  In the present case, Wells Fargo remedied the interest rate and mortgage account information within days of discovering the mistake and before the Vongs brought

12

suit. Therefore, the safe harbor provision applies, and Wells Fargo is entitled to summary judgment on the RESPA claim.

 **CONCLUSION**

The Court grants summary judgment to Wells Fargo on all of the Vongs' claims against it. In addition, the Court grants summary judgment to the United States but withholds ruling on the terms of the order of sale and entry of judgment. Accordingly, **IT IS HEREBY ORDERED** that:

1.   The United States' Motion for Summary Judgment (Docket No. 35) is **GRANTED** in that the federal tax assessments against the Vongs are reduced to judgment, in the amount of $769,674.19 plus interest;

2.   Wells Fargo's Motion for Summary Judgment (Docket No. 37) is **GRANTED**;

3.   The Vongs' Motion to Supplement the Record (Docket Nos. 69 and 70) is **DENIED**; and

4.   The United States, Ramsey County, the Trust, Wells Fargo, and Dakota County are ordered to submit an agreed order of sale regarding the real property by May 15, 2007.

Dated: <u>April 26, 2007</u>

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge